**Eleanor DiANGELO,**
**Plaintiff–Appellant,**

**v.**

**ILLINOIS DEPARTMENT OF PUBLIC AID, Defendant–Appellee.**

**Clarence ROBERTS, Plaintiff–Appellant,**

**v.**

**Michael P. LANE, Director, Department of Corrections, State of Illinois, et al., Defendants–Appellees.**

Nos. 87–2779, 89–1166.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 20 and 24, 1989.

Decided Dec. 18, 1989.

James W. Keeling, Thomas, Hinshaw & Culbertson, Rockford, Ill., Stephen R. Swofford, William J. Holloway, Keith E. Graham, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiffs-appellants.

William H. London, Timothy J. Cavenagh, Barbara L. Greenspan, James C. O'Connell, Asst. Attys. Gen., William D. Leslie, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., COFFEY, FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.[*]

EASTERBROOK, Circuit Judge.

These two unrelated cases have a common question: whether counsel recruited to represent indigent plaintiffs in district courts must file briefs revealing the inadequacies of their clients' positions in order to be relieved of the appointments on appeal. Such submissions are not necessary, because civil appointments in the district courts do not carry over on appeal.

Elizabeth DiAngelo filed an action contending that her former employer, the Illinois Department of Public Aid, discharged her in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. Clarence Roberts, a state prisoner, filed an action under 42 U.S.C. § 1983 contesting the denials of his applications to take part in work release programs. In each case the district judge asked a member of its

[*] Judges Wood, Coffey, and Easterbrook are the panel in No. 87-2779, submitted on October 24; Judges Flaum, Easterbrook, and Ripple are the panel in No. 89-1166, submitted on October 20.

bar to represent the plaintiff; in each the lawyer did what he could, but the court entered summary judgment for the defendant; in each counsel filed a notice of appeal at his client's request. Counsel then filed documents styled *"Anders* briefs" asking us to relieve them of further duties to the plaintiffs. The briefs analyze the arguments counsel believes could be advanced and concludes that each is frivolous. Because all arguments are futile, counsel for Roberts also suggest that the appeal be dismissed as frivolous.

■ *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), holds that court-appointed counsel in criminal cases must continue the representation on appeal unless relieved, and that an indigent defendant may be left without counsel only if the appeal is frivolous. Defendants are entitled to vigorous advocates, which led the Court to hold that counsel may not desert the client and that a court may not allow counsel to withdraw before he has used all his professional skills to marshal any arguments that can be made on the defendant's behalf. An *"Anders* brief" is designed to show that counsel gave the case his best shot and to provide the court with the tools necessary to establish whether the case is indeed frivolous. Unless it is frivolous, the court must continue the appointment or secure new counsel for the defendant. See also *Penson v. Ohio,* —— U.S. ——, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).

■ Civil cases are quite different. Indigent civil litigants have no constitutional right to counsel at the expense of another—whether of the adversary or of the private bar. Courts do not "appoint" counsel in ADEA or § 1983 cases; they request members of their bar to assist. *Mallard v. United States District Court,* —— U.S. ——, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Judges do not do this as of course; they recruit lawyers for the parties only when the cases are colorable, the facts may be difficult to assemble, and the law is complex. *Maclin v. Freake,* 650 F.2d 885, 887–89 (7th Cir.1981); see also, e.g., *Howland v. Kilquist,* 833 F.2d 639, 646 (7th Cir.1987); *Caruth v. Pinkney,* 683 F.2d 1044 (7th Cir.1982). Our own practice tracks that of district courts. Most indigent parties in civil cases must fend for themselves here, attempting to persuade lawyers to take their cases and representing themselves if members of the bar think their claims weak. *Darden v. Illinois Bell Telephone Co.,* 797 F.2d 497, 504–05 (7th Cir.1986) (concurring opinion). Title 42 U.S.C. § 1988 promises compensation to victorious counsel, which has prompted lawyers to come to litigants' aid. Nonetheless, on occasion the complexities of a case might prevent us from affording adequate consideration in the absence of counsel, and we ask a member of our bar to represent the party. Lawyers have been willing through the years to render this important service at our request, without compulsion, and in so doing have fulfilled the highest traditions of the profession.

■ Whether an indigent civil litigant should have (unwilling) private counsel in this court is a question for us to decide. Circuit Rule 4 provides that all lawyers appointed under the Criminal Justice Act, which includes direct criminal appeals and some applications for collateral relief in criminal cases, must continue to represent their clients unless we relieve them. Nothing in Rule 4—or any other rule of which we are aware—requires counsel recruited in civil cases by district judges to continue as counsel in this court. *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), holds that because there is no right to appointed counsel in civil litigation, a lawyer who assists a prisoner in a collateral attack on a conviction need not file an *Anders* brief in order to avoid the obligation on appeal. That principle is equally applicable to a lawyer who agreed to assist an indigent plaintiff in litigation under the ADEA or § 1983.

■ Appointments in civil cases do not carry over from one court to another. This implication of Circuit Rule 4—which we make explicit—means that accepting a request by a district judge is less onerous, which will make counsel more willing to undertake the representation of the indi-

gent in the first place. Some lawyers who are willing to aid a party in one court will be unwilling to commit the time and resources necessary to do so in two; other lawyers may think their skills suited to trials but shy away from appellate work and therefore be reluctant to take a two-court appointment. Appointments on appeal come from members of our own bar whose interests and skills run to appellate work. *United States v. Fountain*, 840 F.2d 509, 513 (7th Cir.1988).

Limiting appointment to one court at a time also avoids an unfortunate side effect of *Anders*. The *Anders* brief has come to be not only a presentation of all that counsel could say (within ethical bounds) on the defendant's behalf, but also an explanation why those arguments are frivolous. To show that he has done his best for the client, counsel turns against the client. Tugged three ways—duty to client, duty to court, and duty to self (self-respect, as well as self-interest in light of the prospect of sanctions under Fed.R.App.P. 38 for advancing frivolous arguments)—lawyers find *Anders* briefs distasteful yet necessary. Damning a client's case in order to free oneself from the representation is unpleasant business at best. *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988), holds that a state may compel counsel to explain not only the best available arguments but also why they aren't good enough, but we hesitate to extend this approach to civil appeals.

■ We issued notices giving DiAngelo and Roberts an opportunity to demonstrate that their cases are not frivolous and to ask this court to appoint counsel. DiAngelo replied through counsel (the same lawyers who had filed a brief condemning her claims as frivolous) that she wants a trial because she "cannot find suitable employment to utilize her education, which includes a masters degree in social science" and because she believes that state administrative officials did not properly investigate her claim. She has no answer to the reason the district judge granted summary judgment, 1987 WL 18342, 1987 U.S.Dist.

LEXIS 9465 (N.D.Ill.1987): after the state's Human Rights Commission dismissed her claims (concluding that substantial evidence did not support them), DiAngelo had judicial review in state court. The Appellate Court of Illinois affirmed the Commission's decision. That decision bars further litigation in state court, see *Housing Authority v. YMCA*, 101 Ill.2d 246, 251–52, 78 Ill.Dec. 125, 128, 461 N.E.2d 959, 962 (1984), and so is preclusive in the federal action under 28 U.S.C. § 1738. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1981). A contention that the administrative body used improper procedures or acted on the basis of an insufficient record could have been raised in the state litigation; it is therefore not open in a separate federal case. *Button v. Harden*, 814 F.2d 382 (7th Cir.1987).

■ Roberts asked for counsel but gave no reason other than indigence and ignorance of the law; he did not address the reasons the district judge gave for deciding against him. 1988 WL 143730, 1988 U.S. Dist. LEXIS 15283 (N.D.Ill.1988). Roberts is a "Class X" felon—convicted of a serious crime and serving a long sentence. Class X felons are ineligible to participate in work release programs. In 1984 Illinois adopted a rule, 20 Ill.Adm.Code § 455.50, allowing the Director of Corrections to make exceptions to the criteria otherwise applicable. Roberts does not contend that in exercising discretion under this rule the state held his race or speech against him; he contends only that because other Class X felons have been admitted to the program, discretion should have been exercised in his favor too. Federal courts are not boards of appeal in prison administration. Error in carrying out a lawful state program does not violate the Constitution. *Archie v. City of Racine*, 847 F.2d 1211, 1216–18 (7th Cir.1988) (en banc). Because Roberts' complaint reduces to a contention that state officials violated state law, the appeal from the denial of summary judgment is frivolous.

The motions to withdraw as counsel are denied as unnecessary. Roberts' request

for appointment of counsel is denied. The motions for leave to proceed on appeal in forma pauperis are denied because the appeals are frivolous. The appeals are dismissed.

RIPPLE, Circuit Judge, concurring.

I agree entirely that appointments in civil cases do not carry over to the appellate tribunal when an appeal is taken. I also agree that, once an appointment has been made in a civil case, the court need not require an *Anders* brief before granting counsel permission to withdraw. I write separately only to emphasize that today's decision signals no retreat from the traditional law of this circuit with respect to the discretion of the district court and of this court in appointing counsel.[1]

I am pleased to note the court's acknowledgment that market forces will not always ensure that a meritorious case will find counsel. There will always be cases where the stakes are so low, the plaintiff so reprehensible, or the cause so unpopular that, without a request from the court, the case will proceed without the participation of counsel. Moreover, in requesting counsel to assist the indigent civil litigant, we must be guided not only by a concern for the inability of civil litigants to fend for themselves but also by institutional concerns. As the court noted in *Caruth v. Pinkney*, 683 F.2d 1044, 1049 (7th Cir.1982), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983):

> by appointing counsel in appropriate cases, a district court not only insures that the meritorious claims of a *pro se* plaintiff are not defeated, but also eases the burdens placed both on the district court and on this court when a skilled attorney presents a case.

In an era of massive case loads, the bench and bar share a common interest and responsibility for ensuring that *all* cases are decided expeditiously. In a common law system such as ours, we also share a common interest in seeing that *all* cases are decided correctly. Each case, whether reported or unreported, influences, to some degree, the vectors of our jurisprudence's growth. Consequently, requests for the assistance of counsel ought not be limited to rare cases. Rather, they should be made whenever the need for justice in the individual case or the institutional demands of the efficiency of the judicial system or the intellectual integrity of case law require it.

In a period when the legal profession's income is reaching, at least in some quarters, extraordinary heights, it is not an extraordinary demand to expect the bar to support the system that makes those high incomes possible. Nor do I believe that we shall be disappointed by the response. The rhetoric of the critics notwithstanding, there still exists within the profession a very high level of concern in the bar for the efficiency—and the intellectual integrity—of the judicial system. As the court wrote in *Caruth:*

> The bar within this Circuit has long viewed appointments of counsel as part of its professional duty to provide public service. We have faith that lawyers always will be found who are willing to represent the indigent without remuneration.

*Caruth v. Pinkney*, 683 F.2d at 1049. While the judiciary ought not make unreasonable demands upon the bar, we should not underestimate its willingness to help when help is needed.

---

1. This court has already set forth in some detail the factors that ought to be weighed in determining whether counsel ought to be appointed:

    (1) the merits of the indigent litigant's claim (whether there is a colorable claim);

    (2) the nature of the factual issues raised in the claim, and whether the indigent is in a position to investigate crucial facts;

    (3) the need for legal counsel for cross-examination, particularly when there is a question of credibility;

    (4) the indigent litigant's capability to present his own case; and

    (5) the complexity of the legal issue. *Howland v. Kilquist*, 833 F.2d 639, 646 (7th Cir.1987); *see also Maclin v. Freake*, 650 F.2d 885, 887–89 (7th Cir.1981).